UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILLION WELDEMHRET GEBRELIBANOS,<br><br>Petitioner,<br><br>v.<br><br>CHAD F. WOLF, Secretary of the Department of Homeland Security, et al.,<br><br>Respondents. | Case No.: 20-cv-1575-WQH-RBB<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Million Weldemhret Gebrelibanos. (ECF No. 1).

## I. PROCEDURAL BACKGROUND

On August 14, 2020, Petitioner Million Weldemhret Gebrelibanos filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). Petitioner alleges that he is an immigration detainee at the Imperial Regional Detention Facility ("IRDF"). Petitioner alleges that he has been detained since June 14, 2019, when he was ordered removed to Eritrea and did not appeal. Petitioner alleges that the Eritrean Embassy is closed due to the COVID-19 pandemic, flights to Eritrea have been suspended, and Petitioner cannot be removed. Petitioner alleges that his civil detention has been unlawfully

prolonged in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001). Petitioner requests that "that this Court order respondents to release him on the conditions set forth in 8 U.S.C. § 1231(a)(3)."[1] (*Id.* at 13).

On September 1, 2020, the Court ordered Respondents to show cause why the Petition should not be granted by filing a written return. (ECF No. 5). On September 14, 2020, Respondents filed a Return to the Petition. (ECF No. 9). On September 23, 2020, Petitioner filed a Traverse.

## II. FACTS

Petitioner is a native and citizen of Eritrea. (Gebrelibanos Decl., ECF No. 1 at 17 ¶ 1). On January 25, 2019, Petitioner entered the United States at the Calexico Port of Entry seeking asylum. (*Id.* at ¶ 3; Record of Deportable/Inadmissible Alien, ECF No. 9-1 at 3-4). An asylum officer determined that Petitioner had a credible fear of persecution or torture. On March 25, 2019, the Department of Homeland Security ("DHS") issued a Notice to Appear for removal proceedings, charging Petitioner with removability under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. (Notice to Appear, ECF No. 9-1 at 6). On June 14, 2019, an immigration judge denied Petitioner's requests for relief and ordered Petitioner removed to Eritrea. (IJ Order, ECF No. 9-1 at 8). Petitioner did not appeal. (Gebrelibanos Decl., ECF No. 1 at 17 ¶ 4).

---

[1] 8 U.S.C. § 1231(a)(3) provides:
    (3) Supervision after 90-day period. If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—
        (A) to appear before an immigration officer periodically for identification;
        (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
        (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
        (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

Petitioner has been detained at IRDF since June 14, 2019. Immigration and Customs Enforcement ("ICE") reviewed Petitioner's custody on September 10, 2019, and December 16, 2019. On both occasions, ICE determined that Petitioner would remain in detention pending removal to Eritrea. (Decisions to Continue Detention, ECF No. 9-1 at 9, 10).

Deportation Officer Alice Wu states in her Declaration:

> The Government of Eritrea has agreed to issue travel documents upon receipt of a travel document request from the United States that includes some evidence of identity such as an Eritrean passport, a national ID card, a national ID card number, or other similar evidence of identity. From September 2017 to June 4, 2020, the Government of Eritrea has issued 117 travel documents to ICE. The issuance of a travel document is more time consuming and often requires an interview if the individual is unable or unwilling to supply national identity information to the Embassy of Eritrea.

(Wu Decl., ECF No. 9-2 ¶ 8). Petitioner does not have an Eritrean passport, national identity card, transportation issued card, or national identity number. (Second Gebrelibanos Decl., ECF No. 10-1 ¶¶ 3-9; *See* Wu Decl., ECF No. 9-2 ¶ 9 ("Petitioner has not provided an Eritrean passport or national identity card. He also has not provided a national identity number or other similar evidence of identity . . . .")). Wu states in her Declaration that on July 26, 2019, ICE's San Diego Field Office "submitted a travel document (TD) packet to the Embassy of Eritrea." (Wu Decl., ECF No. 9-2 ¶ 5). Wu states that on November 22, 2019, ICE presented Petitioner's "TD packet at the Embassy of Eritrea in Washington, D.C. and U.S. Embassy in Asmara for presentation of this TD packet to Eritrea Ministry of Foreign Affairs." (*Id.*). Wu states that "[o]n January 9, 2020, Government of Eritrea informed [ICE] that Petitioner's identity was unverifiable based on the provided information." (*Id.* ¶ 6).

On February 27, 2020, Petitioner filed a motion for a bond hearing with an immigration judge. The immigration judge held a hearing on March 12, 2020. The immigration judge determined that Petitioner's continued detention is permissible under *Zadvydas* because "the Department has demonstrated that his removal may be imminent. During the March 12 hearing, the Department stated that [Petitioner] had a telephone

interview with the Eritrean Consulate for later that day . . . to begin the process of repatriating [Petitioner]." (In Bond Proceedings, ECF No. 1 at 22). The immigration judge denied bond, finding that the court lacked jurisdiction over his custody status and that Petitioner is "an extreme flight risk because he has been ordered removed, has tenuous ties to the United States, and has not demonstrated that his proposed sponsor is able to financially support him." (*Id.* at 24).

The Eritrean Consulate did not interview Petitioner on March 12, 2020. Petitioner states that at the time of his Declaration on July 29, 2020, he had not heard from the ICE agent assigned to his case for approximately two months. (Gebrelibanos Decl., ECF No. 1 at 17 ¶ 9). Wu states in her Declaration that "the [March 12] interview was rescheduled and will take place on September 16, 2020." (Wu Decl., ECF No. 9-2 ¶ 7). On September 16, 2020, Petitioner had a telephone interview with the Eritrean Embassy. (Second Gebrelibanos Decl., ECF No. 10-1 ¶ 10).

Wu states in her Declaration that "due to the COVID-19 pandemic, Eritrea is not accepting commercial flights." (Wu Decl., ECF No. 9-2 ¶ 10). Wu states that "[o]n September 3, 2020, an official request was served by the Department of State on the Government of Eritrea requesting permission to fly a chartered aircraft to remove Eritrean nationals to Eritrea. This request is currently pending with the Government of Eritrea." (*Id.* ¶ 11). Wu states that "[t]he Eritrean Embassy has been issuing travel documents during the COVID-19 pandemic." (*Id.* ¶ 8). Wu states that "[o]nce the Eritrean government issues a travel document for [Petitioner], ICE will complete the travel arrangements and remove [Petitioner] as expeditiously as possible." (*Id.* ¶ 13). During Petitioner's September 16, 2020, interview, the Eritrean Embassy did not provide any information about whether or when Eritrea would issue a travel document for Petitioner, or whether or when Petitioner may be removed to Eritrea. (Second Gebrelibanos Decl., ECF No. 10-1 ¶ 16).

## III.    DISCUSSION

Petitioner asserts that his civil detention has been unlawfully prolonged because he has been detained for over fourteen months since his removal order became final, and there

is no reasonable foreseeability of Petitioner's removal to Eritrea due to the COVID-19 pandemic. Respondents contend that "Petitioner has not demonstrated that there is no significant likelihood of removal in the reasonably foreseeable future[,] [and] [d]elay alone does not satisfy his burden." (ECF No. 9 at 1-2). Respondents contend that ICE is working to obtain Petitioner's travel documents and "anticipates that Petitioner will be removed as expeditiously as possible after his travel document is issued." (*Id.* at 2).

To succeed on a habeas petition, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under 8 U.S.C. § 1231, "when an alien is ordered removed from the United States, the Attorney General is obliged to facilitate that individual's actual removal within 90 days, a period called the 'removal period.'" *Xi v. U.S. Immigration & Naturalization Serv.*, 298 F.3d 832, 834-35 (9th Cir. 2002) (quoting 8 U.S.C. § 1231(a)(1)). "During the removal period, the Attorney General is required to detain an individual who has been ordered removed on certain specified grounds." *Id.* at 835 (citing 8 U.S.C. § 1231(a)(2)). "Congress, however, recognized that securing actual removal within 90 days will not always be possible. Consequently, [§ 1231] authorizes detention beyond the removal period." *Id.* (citing § 1231(a)(6)). "[T]he statute 'does not permit indefinite detention.'" *Id.* at 836 (quoting *Zadvydas*, 533 U.S. at 689). Section 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. The Attorney General may detain an alien subject to a final removal order for a "presumptively reasonable period" of six months. *Id.* at 701. After this six-month period, an alien's "continued detention is permissible if his removal is reasonably foreseeable." *Xi*, 298 F.3d at 839 (citing *Zadvydas*, 533 U.S. at 699-701).

The petitioner "has the burden to provide 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Id.* at 839-840 (quoting *Zadvydas*, 533 U.S. at 701). The petitioner's allegations must go beyond "the absence of an extant or pending repatriation agreement" and give "due weight to the

likelihood of successful future negotiations." *Zadvydas*, 533 U.S. at 702 (citation omitted). However, the allegations need not demonstrate "the absence of *any* prospect of removal." *Id.* "Once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. The government may rebut the detainee's showing with "evidence of progress . . . in negotiating a petitioner's repatriation." *Kim v. Ashcroft*, 02cv1524-J(LAB) (S.D. Cal. June 2, 2003), ECF No. 25 at 8 (citing *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1136 (S.D. Cal. 2001); *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)).

In this case, Petitioner was taken into ICE custody on June 14, 2019, when the immigration judge ordered Petitioner removed to Eritrea. The removal order became final on July 15, 2019, "[u]pon expiration of the time to appeal" the immigration judge's decision. 8 C.F.R. § 1003.39. Petitioner has been detained for more than six months following his final removal order. Petitioner does not have an Eritrean passport, national identity card, transportation issued card, or national identity number. (Second Gebrelibanos Decl., ECF No. 10-1 ¶¶ 3-9). Deportation Officer Alice Wu states in her Declaration that when a detainee does not have national identity information, as is the case with Petitioner, the issuance of an Eritrean travel document is time consuming and often requires an interview. (Wu Decl., ECF No. 9-2 ¶¶ 8-7). On September 16, 2020, Petitioner had a telephone interview with the Eritrean Embassy. (Second Gebrelibanos Decl., ECF No. 10-1 ¶10). Wu states that "[t]he Eritrean Embassy has been issuing travel documents during the COVID-19 pandemic." (Wu Decl., ECF No. 9-2 ¶ 8). Eritrea is not accepting commercial flights. However, Wu states that "[o]n September 3, 2020, an official request was served by the Department of State on the Government of Eritrea requesting permission to fly a chartered aircraft to remove Eritrean nationals to Eritrea. This request is currently pending with the Government of Eritrea." (*Id.* ¶ 11). Wu states that "[o]nce the Eritrean government issues a travel document for [Petitioner], ICE will complete the travel arrangements and remove [Petitioner] as expeditiously as possible." (*Id.* ¶ 13).

Respondents have set forth evidence that demonstrates progress and the reasons for the delay in Petitioner's removal. Travel documents have been requested. The Eritrean Embassy is reviewing Petitioner's application for a travel document and the Department of State's request for a charter flight to Eritrea. Progress is being made on Petitioner's case as recently as September 16, 2020. However, Petitioner has been detained for over fourteen months, and it is unclear whether or when the Eritrean Embassy will issue a travel document.

## IV. CONCLUSION

IT IS HEREBY ORDERED that Respondents shall file a status report on the status of Petitioner's removal to Eritrea within fourteen (14) days of the date of this Order. The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) remains pending.

Dated: October 6, 2020

Hon. William Q. Hayes
United States District Court